# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 9, 2026

Lyle W. Cayce
Clerk

No. 25-50293

FBCC CityPoint, L.P.,

*Plaintiff—Appellant*,

*versus*

City of Austin; Jose Roig; Matthew Noriega; Jesus Garza, *in his official capacity as Interim City Manager*; Daniel Word, *in his official capacity as Acting Code Director*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-1272

Before Haynes, Higginson, and Ho, *Circuit Judges*.

Per Curiam:[*]

FBCC CityPoint, L.P. ("FBCC") filed a prior lawsuit against the City of Austin's Building and Standards Commission ("BSC"), challenging notices of violation that the BSC issued to its apartment complex, Mueller Flats, following Winter Storm Uri. Subsequently, FBCC filed the instant lawsuit against the City of Austin and certain City officials in their official

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-50293

capacities, challenging the "Repeat Offender Program" list that the BSC required Mueller Flats to register for. The district court dismissed the suit on res judicata grounds. We agree, so we AFFIRM.[1]

## I.    Background

### A.    Factual Background

After Winter Storm Uri hit Texas in February 2021, residents of the Mueller Flats apartment complex in Austin, Texas, owned by FBCC, were left without consistent cold or hot water for weeks. There were also numerous leaks, rendering many units uninhabitable. During this time, FBCC charged tenants full rent. The City issued "notices of violation" to Mueller Flats concerning this damage.

In March 2021, the City required Mueller Flats to register for its Repeat Offender Program ("ROP") list. The ROP designation is applicable to a property that meets what the City calls the "2-5-2" criteria: "has two or more citations issued within the prior 24 months . . . five or more Notices of Violation issued within the prior 24 months . . . or . . . two or more Notices of Violation that have not been complied with timely within the last 24 months." While Code Department Director Jose Roig had directed that no Uri-related violations should be used for ROP qualification, the City's ROP designation of Mueller Flats was based on violations from 2019 through February 2021, after the storm. In May 2021, FBCC lost an appeal of its ROP designation with the City. In November 2021, the City suspended

---

[1] FBCC also appeals on the district court's striking of certain testimony of FBCC's damages expert, Dr. Thompson, related to FBCC's lost rental income during the two-month period of rental suspension the City ordered in November 2021, and other testimony related to FBCC's damages from March 2021 to the time of the motion. Because we affirm on res judicata grounds, we need not address this issue.

No. 25-50293

Mueller Flats's rental registration. But it released that suspension and reinstated Mueller Flats's registration in January 2022.

### B.    Procedural Background

In June 2021, FBCC sued the BSC (named as "Building and Standards Commission of the City of Austin, Texas") in Texas state district court, challenging the notices of violation it received after Winter Storm Uri (the "First Lawsuit"). Final judgment was entered for FBCC on October 17, 2022, vacating the notices of violation FBCC complained of and "disposing of all parties and claims." Neither party appealed.

Subsequently, FBCC filed the instant lawsuit in federal district court against the City of Austin and City officials—Jesús Garza, Daniel Word, Jose Roig, and Matthew Noriega—in their official capacities (collectively, the "City"), asserting constitutional challenges to the ROP. The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of the City, concluding that res judicata precludes FBCC's claims. The district court did not reach any other issue. FBCC promptly appealed.

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction under 28 U.S.C. § 1331 because FBCC brought claims for violations of the U.S. Constitution and 42 U.S.C. § 1983, and it had supplemental jurisdiction under 28 U.S.C. § 1367. We have jurisdiction over this appeal under 28 U.S.C. § 1291 because the district court entered a final judgment.

We review de novo a district court's dismissal based on res judicata. *Mowbray v. Cameron Cnty.*, 274 F.3d 269, 281 (5th Cir. 2001). "A federal court, asked to give res judicata effect to a state court judgment, must apply the res judicata principles of the law of the state whose decision is set up as a

No. 25-50293

bar to further litigation." *Hernandez v. City of Lafayette*, 699 F.2d 734, 736 (5th Cir. 1983). Therefore, we apply Texas law.

## III.    Discussion

On appeal, FBCC argues, among other things, that the district court erred in granting summary judgment for the City on res judicata grounds. We address res judicata, which is dispositive.

"[R]es judicata, or claim preclusion, bars causes of action that have already been fully adjudicated or that, with the use of diligence, could have been brought in the prior suit." *Rosetta Res. Operating, L.P. v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022). Under Texas law, the elements of res judicata are: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

Here, each element of res judicata is met.

*First*, there was a "prior final judgment on the merits by a court of competent jurisdiction." *Id.* FBCC does not challenge this element. The Texas state district court entered a final judgment in the First Lawsuit, and no one argues that the state district court did not have jurisdiction.

*Second*, the "identity of parties or those in privity with them" are the same in this action as in the First Lawsuit. *Id.* While the parties in the First Lawsuit and the instant lawsuit are not identical, as the First Lawsuit was brought against the BSC and the instant lawsuit was brought against the City and its named officials, the City has a convincing argument that the BSC *is* the City. For one, there is no indication that the BSC has separate legal existence apart from the City, as it was created by the City under the Texas

4

No. 25-50293

Local Government Code's provision that "[t]he governing body of the municipality may provide for the appointment of a building and standards commission to hear and determine cases concerning alleged violations of ordinances." Tex. Loc. Gov't Code Ann. § 54.033(a). Additionally, it is clear that in the First Lawsuit, FBCC intended to obtain relief from the City. The First Lawsuit was filed against "the Building and Standards Commission *of the City of Austin, Texas*" (emphasis added), and FBCC pleaded that the BSC could be properly served by serving the City Clerk, Jannette Goodall, at City Hall.

Even if the BSC is not the City, privity exists between the two. "People can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *Amstadt*, 919 S.W.2d at 653. Here, the City controlled the First Lawsuit, as its law department represented the BSC. Furthermore, the City's interests were represented in the First Lawsuit because the BSC, represented by the City's legal department, defended its notices of violation—notices it issued on behalf of the City.

*Third*, the instant lawsuit is a "second action based on the same claims as were raised or could have been raised in the first action." *Id.* at 652. Res judicata applies not only to claims that were actually litigated in the prior suit, but also to those that "*could* have been litigated" in the prior suit. *Id.* (emphasis added). Texas courts conduct an "analysis of the factual matters that make up the gist of the complaint," and "[a]ny cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Barr v. Resol. Tr. Corp.*, 837 S.W.2d 627, 630 (Tex. 1992). Under this "transactional approach," a "transaction" "is not equivalent to a sequence of events," but rather "the determination is to be made pragmatically, giving weight to such considerations as whether the facts are

5

related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id.* at 631 (citation modified).

Here, the claims in the instant lawsuit arise out of the same facts as the First Lawsuit: the City's Code enforcement actions against Mueller Flats following Winter Storm Uri. The two City actions at issue—giving Mueller Flats notices of violation and requiring it to register for the ROP list—were related in "time, space, origin, or motivation." *Id.* (citation omitted). The relationship is demonstrated by the overlap between allegations in the First Lawsuit and the instant lawsuit. Indeed, many allegations in the two are identical or almost identical.

By the time the First Lawsuit was filed, Mueller Flats had already been required to register for the ROP list and had lost its appeal concerning that decision. Therefore, FBCC could have raised claims relating to the ROP in the First Lawsuit, and the claims should have been brought together in one proceeding. Therefore, FBCC's instant claims are barred by res judicata.

## IV.    Conclusion

Accordingly, we AFFIRM.